**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **SHERI LYNN ALLEN,** ) | **CASE NO. 5:11CV1095** |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MAGISTRATE JUDGE GREG WHITE** |
| ) | |
| **MICHAEL ASTRUE,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | **MEMORANDUM OPINION & ORDER** |

Plaintiff Sheri Lynn Allen ("Allen") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Allen's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is vacated and remanded for further proceedings consistent with this opinion.

**I. Procedural History**

On November 26, 2006, Allen filed an application for POD, DIB, and SSI alleging a disability onset date of October 15, 2006, and claiming that she was disabled due to back and affective disorders. Her application was denied both initially and upon reconsideration. Allen timely requested an administrative hearing.

On April 5, 2010, an Administrative Law Judge ("ALJ") held a hearing during which Allen, represented by counsel, testified. Testimony was also received from an impartial medical expert ("ME"), neurologist Hershel Goren, M.D., and an impartial vocational expert ("VE"), Ted S. Macy. On August 26, 2010, the ALJ found Allen was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the

final decision of the Commissioner when the Appeals Council denied further review.

## II. Evidence

*Personal and Vocational Evidence*

Age 43 at the time of her administrative hearing, Allen is a "younger" person under social security regulations.[1] *See* 20 C.F.R. §§ 404.1563 & 416.963. Allen has a high school education and past relevant work as a retail cashier. (Tr. 16-17.)

*Medical Evidence*

   *Treating Physicians*

In November, 2008, Jennifer Drake, D.O., a neurology specialist, consulted with Allen regarding complaints of numbness and tingling on her right side and headaches. (Tr. 243-246.) On examination, Dr. Drake found tenderness to palpation in multiple areas, positive straight leg raising and decreased sensation in her lower extremity, although no loss of reflex or strength. (Tr. 244-245.) Dr. Drake noted Allen had normal orientation, alertness, memory, and concentration. (Tr. 244.) She had normal motor bulk, tone, and strength, as well as intact sensory responses in her upper extremities. *Id.* She had a normal gait and coordination. (Tr. 245.) Inderal and Ultram were prescribed for pain. *Id*.

In January, 2009, Dr. Drake noted that Allen's symptoms did not respond to the medications, and suggested that she might have fibromyalgia. (Tr. 237-238.) Dr. Drake completed a form stating that Allen was unable to work from January 8, 2009 through January 14, 2009. (Tr. 269.) The doctor's treatment notes indicated that Allen could not participate in "community service due to her pain and disability from pain" for that period. (Tr. 238.) In August, 2009, Dr. Drake completed a form indicating that Allen was unable to work for the period March 13, 2009 through September 11, 2009. (Tr. 268.) As to this timeframe, Dr. Drake noted that Allen was unable to work due to her "ongoing issues." (Tr. 284.)

In August, 2009, Allen was referred to Abbas Sadeghian, Ph.D., a clinical

---

[1] At the hearing, Allen testified that she was 44 years old. The record reflects that she turned 44 two days after the hearing date. (Tr. 26, 50.)

2

neuropsychologist for treatment of post traumatic stress disorder. (Tr. 234-235.) Allen reported that she had been suffering from mood disorders for a long time and that she was dealing with a multitude of stressors, including medical problems. (Tr. 234.) Dr. Sadeghian concluded that Allen's condition was complex and required long-term intensive psychotherapy, as well as medication management by a psychiatrist. *Id.* Allen was referred to Phoenix Rising mental health center for treatment. (Tr. 235.)

Allen's treating physician Arsal Ahmad, M.D., a pain management specialist, began seeing her for chronic pain and depression on December 30, 2009. (Tr. 326-328.) On that date he diagnosed her with fibromyalgia, chronic pain syndrome, depression and possible post-traumatic stress disorder. (Tr. 328.) He recommended medication management, physical therapy, nutrition, vitamin supplements, and exercise. *Id.*

At the next visit in March, 2010, Dr. Ahmad completed a fibromyalgia questionnaire, assessing Allen's capacity consistent with less than sedentary work. (Tr. 285-291.) He noted widespread tenderness to palpation, meeting the criteria for fibromyalgia. (Tr. 285.) He indicated that Allen's symptoms included multiple tender points, nonrestorative sleep, chronic fatigue, muscle weakness, anxiety, and depression. (Tr. 286.) He also noted that Allen had pain in every part of the body listed. (Tr. 286-287.) Dr. Ahmad reported frequent pain that was severe enough to interfere with attention and concentration, and that Allen could not tolerate any work stress due to her pain and depression. (Tr. 287.) He indicated that Allen could walk three blocks without rest or severe pain, sit for thirty minutes at one time and about four hours total, stand for fifteen minutes at a time, and stand and walk for less than two hours total. (Tr. 288.) Allen needed to shift positions at will and take unscheduled breaks. (Tr. 289.) She could occasionally lift up to ten pounds. (Tr. 290.) She would be absent from work more than four times a month due to her impairments or treatment. (Tr. 291.) Dr. Ahmad did not think Allen was a malingerer. (Tr. 286.)

In June, 2010, Dr. Ahmad reported that Allen was achieving good analgesic response, without side effects, taking two Vicodin per day. (Tr. 385.) In August and October, 2010, Allen reported good relief with Vicodin. (Tr. 379, 384.) She continued to follow-up with Dr. Ahmad

3

through October, 2010. (Tr. 379, 384-388.)

***State Agency Physicians***

On February 14, 2008, Lokendra Sangal, M.D., examined Allen for the Bureau of Disability Determination ("BDD"). (Tr. 185-192.) Dr. Sangal noted that Allen was a good historian, but appeared to be exaggerating her symptoms. (Tr. 185.) Upon examination, Dr. Sangal noted that Allen looked very depressed. (Tr. 186.) She was shaking and crying and complained of pain and tenderness, especially in her neck and back. (Tr. 186-187.) Dr. Sangal concluded that she suffered from depression and fibromyalgia. (Tr. 187.) He assessed her work-related activities as follows:

> Sheri Lynn Allen's ability to do lifting and carrying is definitely impaired due to her neck pain and back pain and also fibromyalgia clinically. The claimant had no difficulty with tasks requiring walking or handling objects. She was not using any ambulatory aides. The claimant had no difficulty with speech or hearing. Her mental activity reveals this person clinically was very depressed and might benefit from a psychiatric evaluation. Sheri's ability to climb, balance, stoop, crouch, kneel or crawl was limited. She was able to walk without assistance but had a hard time bending, had a hard time squat [sic] and was not able to walk on heels and toes due to a lot of back pain. Her physical functions of seeing, hearing and speaking are not impaired. Grasp in both hands was grossly normal.

(Tr. 187.)

On February 21, 2008, W. Jerry McCloud, M.D., a state agency reviewing doctor assessed Allen as capable of medium exertional work. (Tr. 195.) His opinion was based upon the degenerative changes in her back. Dr. Sangal's diagnosis of fibromyalgia was not mentioned. (Tr. 195, 199.) In August, 2008, Nick Albert, M.D., affirmed Dr. McCloud's assessment. (Tr. 233.)

In June, 2008, William E. Mohler, M.A., a state agency examining psychologist, evaluated Allen's mental condition and found her daily activities were consistent with a significantly depressed individual. (Tr. 210-213.) He concluded that she had a severe depressive disorder which was not being treated. (Tr. 212.) He assigned her a global assessment of functioning ("GAF") score of 50.[2] *Id.* Mohler reported that she had moderate impairment in

---

[2] A GAF score between 41 and 50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning. A person who scores in this range may have suicidal

her ability to relate to coworkers and supervisors, maintain attention, concentration, persistence and pace and in her ability to withstand the stress and pressures associated with day-to-day work activity. (Tr. 213.)

In July, 2008, Douglas Pawlarczyk, a state agency reviewing psychologist, gave weight to Mohler's moderate restrictions on Allen's abilities to withstand stress, relate to other people, and sustain concentration. (Tr. 217.)

*Hearing Testimony*

At the hearing, Allen testified as follows:

- Her days consist of trying to manage her pain. (Tr. 28-29.) She is able to do light activities for short periods of time, such as washing the dishes and starting the laundry. *Id*. While doing chores, she requires frequent breaks and has to sit or lie down during the day. *Id*.

- Her most disabling condition is pain. (Tr. 30.) Without pain medication she is unable to function. (Tr. 33.)

- When asked by her attorney to describe the way she is sitting in her chair at the hearing, she explained that she sat at the edge of the chair as it was too painful to sit all the way back. (Tr. 31-32.) She also described how she rocked in the chair in order to help relieve pain. (Tr. 32.)

Dr. Goren testified as follows:

- Allen's impairments are major depressive disorder, panic disorder, and post traumatic stress disorder. (Tr. 36.)

- Allen's treating physician, Dr. Ahmad, diagnosed fibromyalgia. (Tr. 37.)

- Dr. Ahmad's functional capacity restriction to less than sedentary work was contrary to medical literature which advises that fibromyalgia should be treated by vigorous exercise. *Id*.

- Allen retained the capacity for work that involved no high production quotas, assembly-line work, or piece-rate work; no more than superficial interpersonal interaction with supervisors, co-workers, and the general public; no arbitration, negotiation, or confrontation; no supervision of others; and, no responsibility for the safety or welfare of others. *Id*.

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the

---

ideation, severe obsessional rituals, no friends, and may be unable to keep a job. See Diagnostic and Statistical Manual of Mental Disorders, 34 (American Psychiatric Association, 4th ed. revised, 2000).

time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[3]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Allen was insured on her alleged disability onset date, October 15, 2006, and remained insured through September 30, 2010. (Tr. 10.) Therefore, in order to be entitled to POD and DIB, Allen must establish a continuous twelve month period of disability commencing between those dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Allen established medically determinable, severe impairments, due to

---

[3]The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

major depressive disorder, personality disorder, post-traumatic stress disorder, and fibromyalgia; however, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Allen was found incapable of performing her past work activities, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Allen is not disabled.

## V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied.

7

Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI. Analysis

*Treating Physician/Fibromyalgia*

Allen contends that the ALJ failed to give good reasons for rejecting her treating physician's assigned restrictions due to fibromyalgia. (Doc. No. 17 at 12-15.) The Commissioner asserts that because of the conflicting opinions in the record, the ALJ relied upon other medical and non-medical evidence to determine Allen's functional capacity including the lack of objective medical evidence regarding a significant sensory, reflex, or motor loss in her upper or lower extremities, and the fact that she required only conservative medical treatment. (Doc. No. 19 at 13-14.) Allen counters that when determining the severity of fibromyalgia, objective tests are of little relevance. (Doc. No. 20 at 2.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all

of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[4]

Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p). Moreover, the ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir.1984). According to 20 C.F.R. § 404.1527(e)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id*. It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

Fibromyalgia "is a medical condition marked by 'chronic diffuse widespread aching and stiffness of muscles and soft tissues.'" *Rogers v. Comm'r of Soc. Sec*., 486 F.3d 234, 244 n. 3 (6th Cir. 2007) (*quoting* Stedman's Medical Dictionary for the Health Professions and Nursing at

---

[4] Pursuant to 20 C.F.R. § 404.1527(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

541 (5th ed. 2005)). Diagnosing fibromyalgia involves "observation of the characteristic tenderness in certain focal points, recognition of hallmark symptoms, and 'systematic' elimination of other diagnoses." *Rogers*, 486 F.3d at 244 (*quoting Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988). CT scans, x-rays, and minor abnormalities "are not highly relevant in diagnosing [fibromyalgia] or its severity." *Id.*; *see also Preston*, 854 F.2d at 820. "[P]hysical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion." *Id*. at 818. Individuals suffering from fibromyalgia "manifest normal muscle strength and neurological reactions and have a full range of motion." *Rogers*, 486 F.3d at 244 (*quoting Preston*, 854 F.2d at 820).

> Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and--the only symptom that discriminates between it and other diseases of a rheumatic character--multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch. All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch. There is no serious doubt that [the claimant] is afflicted with the disease but it is difficult to determine the severity of her condition because of the unavailability of objective clinical tests. Some people may have such a severe case of fibromyalgia as to be totally disabled from working, Michael Doherty & Adrian Jones, "Fibromyalgia Syndrome (ABC of Rheumatology)," 310 British Med. J. 386 (1995); *Preston v. Secretary of Health & Human Services*, 854 F.2d 815, 818 (6th Cir. 1988) (*per curiam*), but most do not and the question is whether [claimant] is one of the minority.

*Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996); *see also Preston*, 854 F.2d at 817-818 ("In stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results - a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion and testing of certain 'focal tender points' on the body for acute tenderness which is characteristic in fibrositis patients.")

Nonetheless, "the mere diagnosis of fibromyalgia is insufficient to render a claimants complaints of disabling pain credible." *Vlaiku v. Astrue*, 2008 U.S. Dist. LEXIS 64442 (N.D. Ohio Aug. 4, 2008) (*citing Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967); *Brazier v. Sec'y of Health & Human Servs.*, 61 F.3d 903 (6th Cir. 1995)).

A treating physician's opinion that a claimant is disabled by fibromyalgia may be accorded controlling weight if the physician has treated the claimant's symptoms over a lengthy period of time and excluded other possible diagnoses, and if the finding of disability is not contradicted by other substantial evidence of record. *Boston v. Astrue*, 2011 WL 4914759, *6 (S.D. Ohio Sep. 15, 2011) (*citing Preston*, 854 F.2d at 820.)

In the instant matter, the ALJ weighed the treating physicians' opinions, as follows:

> In assessing Ms. Allen's residual functional capacity and her credibility, I note that this record contains various medical source opinions that deal with Ms. Allen's residual functional capacity and her ability to work or both. State agency physicians who reviewed this record offered the opinions that Ms. Allen was capable of carrying out medium work (Exhibits 6F and 13F). A consulting physician who examined Ms. Allen on February 14, 2008 said Ms. Allen was limited in terms of lifting and carrying but not in terms of walking or handling objects. The medical expert offered the opinion that Ms. Allen's impairments caused non-exertional limitations but no exertional limitations. A treating physician who had seen Ms. Allen twice stated on March 10, 2010 that Ms. Allen could not perform even sedentary work (Exhibit 21F). I find that the latter medical source gave undue deference to Ms. Allen's subjective complaints and the report is neither supported by the entire of the medical evidentiary record nor the claimant's testimony.
>
> Having considered the entire record and in an effort to give Ms. Allen the greatest benefit of the doubt that can be given to her based on this record, I does [sic] not adopt as his [sic] own the opinions of the medical expert and the state agency medical consultants regarding Ms. Allen's physical residual functional capacity given that I concludes [sic] that these medical source opinions do not give adequate consideration to Ms. Allen's subjective complaints. Nevertheless, allegations that Ms. Allen's physical functioning during any continuous 12-month period since the October 15, 2006 alleged onset has been worse than I find are not credible given the evidence as a whole including the above-mentioned medical source opinions. The mental residual functional capacity I has [sic] assigned for Ms. Allen is generally consistent with the opinions of a reviewing state agency psychologist (Exhibit 11F) which are given more weight than the opinions of a consulting psychologist who evaluated Ms. Allen on June 18, 2008 (Exhibit 9F). I find that the latter medical source gave undue deference to Ms. Allen's subjective complaints.

(Tr. 16.) The ALJ then formulated the RFC as follows:

> Since the October 15, 2006 alleged onset date and with the exception of briefer periods of less than 12 continuous months, Ms. Allen has retained the residual functional capacity to perform all the basic work activities described in 20 CFR 404.1521, 404.1545, 416.921 and 416.945 within the following parameters: she can

11

>lift/carry up to 10 pounds frequently and up to 20 pounds occasionally; and she can sit with normal breaks for about six hours in an eight-hour period; and she can stand and/or walk with normal breaks for about six hours in an eight-hour period. Non-exertionally, Ms. Allen has been able to climb ramps or stairs occasionally but she has not been able to climb ladders, ropes or scaffolds. Ms. Allen has also been able to balance frequently (as compared to constantly); and occasionally stoop, kneel, crouch and crawl. Ms. Allen, however, has not been able to work in environments where she would be exposed to extreme cold, wetness or humidity; or where she would have to work around hazards such as machinery and unprotected heights. Ms. Allen has also been able to perform unskilled work so long as the work is low stress work; and so long as the work does not involve production quotas; and so long as the work is not work that is done on a "piece rate" basis; and so long as the work does not require arbitration, confrontation or negotiations with others; and so long as the work does not involve more than minimal interactions with the public, co-workers or supervisors; and so long as the work is work where Ms. Allen would not be responsible for the health, safety or welfare of others; and so long as the work is work where Ms. Allen would not have to supervise others.

(Tr. 12-13.)

It is undisputed that Allen suffers from fibromyalgia. Both Dr. Ahmad, the treating pain specialist[5], and Dr. Sangal, the state agency consultant, diagnosed it. The ME acknowledged that Allen suffered from fibromyalgia. More importantly, the ALJ found at step two of the sequential

---

[5]Although not argued by the parties, under Social Security regulations, Dr. Ahmad, at the time he completed the RFC questionnaire, may not have been a treating physician. *See* 20 CFR §§ 404.1502 & 416.902, defining a "treating source" as follows:

>Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (*e.g.*, twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source. *See also Daniels v. Comm'r of Soc. Sec.*, 152 Fed. App'x 485 (6th Cir. 2005).

12

evaluation that Allen suffered from various severe impairments, including fibromyalgia. (Tr. 11.) As such, it was incumbent upon the ALJ to apply the correct standard under existing Sixth Circuit precedent for evaluating this impairment. The ALJ, however, with limited analysis, ignored medical evidence and Allen's pain complaints in calculating her work-related functional limitations. "[A court] cannot uphold a decision by an administrative agency ... if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). Because the ALJ did not provide an analysis that is sufficiently specific, Allen's argument that the ALJ failed to properly articulate the RFC calculation is well-taken. The Court is unable to trace the path of the ALJ's reasoning.

*Credibility Findings*

Allen also claims that the ALJ failed to properly evaluate her credibility. She takes issue with the ALJ's conclusion that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible and were inconsistent with the RFC. (Doc. No. 17 at 16-17.)

It is well settled that pain alone, if caused by a medical impairment, may be severe enough to constitute a disability. *See Kirk v. Sec' of Health and Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). When a claimant alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating these symptoms. First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment. Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms." SSR 96–7p. Essentially, the same test applies where the alleged symptom is pain, as the Commissioner must (1) examine whether the objective medical evidence supports a finding of an underlying medical condition, and (2) whether the objective medical evidence confirms the alleged severity of pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1038–39 (6th Cir. 1994); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

13

As earlier noted, the ALJ accepted that Allen suffered from various severe impairments, including fibromyalgia. He found that the impairments caused significant limitation in her ability to perform basic work activities. (Tr. 11.) However, the ALJ dismissed Allen's statements concerning the intensity, persistence and limiting effects of the symptoms as not credible. (Tr. 15.) Allen contends that the ALJ failed to identify anything from the reports or the record to support this finding.

It is difficult to find corroborative medical evidence in fibromyalgia cases. Thus, objective medical evidence corroborating allegations of pain will most likely be minimal, or even non-existent, resulting in a greater emphasis on the credibility of Allen's subjective allegations of the severity. Here, the ALJ found that Allen's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with his RFC assessment. (Tr. 15-16.) The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, "[t]he determination or decision must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individuals statements and the reason for the weight." SSR 96–7p, Purpose section; *see also Felisky*, 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"). Beyond medical evidence, there are seven factors that the ALJ should consider.[6] The ALJ need not analyze all seven factors, but should show that he considered the relevant evidence. *See Cross* ,

---

[6] The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96–7p, Introduction; *see also Cross v. Comm'r of Soc. Sec.*, 375 F.Supp.2d 724, 732 (N.D. Ohio 2005).

373 F.Supp.2d at 733; *Masch v. Barnhart*, 406 F.Supp.2d 1038, 1046 (E.D. Wis. 2005).

The decision lacks any discussion concerning the credibility of Allen's pain stemming from fibromyalgia. This is particularly troubling as the credibility determination in fibromyalgia cases is of "paramount importance" because its symptoms are entirely subjective. *See, e.g., Wines v. Comm'r of Soc. Sec.*, 268 F.Supp.2d 954, 960 (N.D. Ohio 2003). The ALJ appears only to have taken two of the seven factors, Allen's daily activities and her pain medications, into consideration when assessing her credibility. The ALJ noted the following:

> In assessing Ms. Allen's residual functional capacity and her credibility, I has [sic] also taken into consideration the fact that Ms. Allen has not been prescribed copious amounts of pain medications since October 15, 2006; and the fact that no significant side effects from medications are mentioned in Ms. Allen's medical records over any continuous 12-month period since October 15, 2006. In finding Ms. Allen's description of the severity of her symptoms and functional limitations to not be entirely credible, I am also taking into account the fact that Ms. Allen's activities of daily living since the October 15, 2006 alleged onset date do not indicate that she is disabled. I specifically note to Ms. Allen's hearing testimony and Exhibit 8F:4 in which she was noted to be carrying laundry.

(Tr. 15-16.) The ALJ neglected to explain how Allen's occasional and infrequent activities performed for a limited amount of time undermine her allegations of disabling pain, how her medications alleviate or fail to alleviate her pain, what other treatments were used, if any, or what other factors concerning her functional limitations and restrictions were relevant. Moreover, Allen's ability to occasionally carry laundry does not equal the ability to engage in substantial gainful activity. *See Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967) ("[t]he fact that [a claimant] can still perform simple functions, such as driving, grocery shopping, dish washing and floor sweeping, does not necessarily indicate that this [claimant] possesses an ability to engage in substantial gainful activity. Such activity is intermittent and not continuous, and is done in spite of the pain suffered by [claimant].") In fact, the ALJ never mentioned fibromyalgia in his credibility analysis. Because the ALJ did not provide an analysis that is sufficiently specific, Allen's argument that the ALJ failed to properly articulate a basis for his credibility finding is well-taken. *See Sarchet*, 78 F.3d at 307. Though the ALJ certainly was not bound to find Allen's allegations credible, the underlying analysis was insufficient under the Administration's procedural rules.

Allen can be awarded benefits only if proof of her disability is "compelling." *Facer v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits only if all essential factual issues have been resolved and proof of disability is compelling). When the ALJ misapplies the regulations or when there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed, the appropriate remedy is not to award benefits. The Court, therefore, concludes that remand is required under "sentence four" of 42 U.S.C. § 405(g).[7]

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision of the Commissioner is vacated and the case is remanded, pursuant to 42 U.S.C. § 405(g) sentence four for further proceedings consistent with this opinion.

IT IS SO ORDERED.

                                                s/ Greg White
                                                United States Magistrate Judge

Date:    April 4, 2012

---

[7] Under sentence four of 42 U.S.C. § 405(g), the district court has the authority to reverse, modify, or affirm the decision of the Commissioner. This may include a remand of the case back to the Commissioner for further analysis and a new decision. A sentence four remand is a final judgment. *See Melkonyan v. Sullivan*, 501 U.S. 89, 97-102, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).